24-mj-5116-JGD

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Special Agent Brandon Barber, being duly sworn, depose and state as follows:

## INTRODUCTION

***Agent Background***

1.  I am a Special Agent with the Drug Enforcement Agency ("DEA"), and have been since 2013. I am currently assigned to the Boston Office of the DEA's New England Division. Previously, I was assigned to the DEA New York Division for approximately 10 years. I investigate possible violations of federal law, including federal drug trafficking and money laundering statutes. I have not included every aspect of my training, education, and experience and have highlighted those areas most relevant to this application.

2.  During my employment with DEA, I have participated in various aspects of drug-related investigations. I have conducted numerous investigations into local, domestic, and international drug trafficking organizations, money laundering organizations, and weapons trafficking organizations. As part of these investigations, I have participated in and been the affiant for drug-related search warrants, as well as warrants dealing with laundering of drug proceeds and the trafficking of illegal firearms. I have participated in controlled purchases of narcotics and illegal firearms utilizing confidential sources and undercover law enforcement agents and officers. I have also conducted and coordinated electronic and physical surveillance of individual involved in the illegal distribution of controlled substances and the laundering of drug proceeds. I have debriefed individuals about their drug-trafficking and money laundering knowledge, information, and activities. I have served and executed search warrants and conducted arrests for violations of federal narcotics, weapons, and money laundering laws, and have participated in the seizure of large amounts of narcotics, narcotics proceeds, and illegal weapons, as well as the seizure of bank accounts and other financial instruments used to launder drug proceeds.

3.      Based on my training and experience, I am familiar with the manner and means commonly employed by drug traffickers, weapons traffickers, and money launderers, including those employed to avoid detection by law enforcement.  I am familiar with the manner in which drug traffickers often store drugs, weapons, and drug proceeds in storage sites commonly referred to as "stash houses," as well as various methods used to conceal and transport these items.  I am also familiar with the terminology, slang, and coded language commonly employed by these individuals. I am aware of the prices commonly charged for various illegal narcotics and illegal weapons, the method of packaging, and the jargon used in their trade.  I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities. Similarly, I am familiar with investigations regarding closely associated illegal activities commonly engaged in by drug trafficking organizations, especially the laundering of drug proceeds.

## Purpose of Affidavit

4.      I make this affidavit in support of an application for a criminal complaint charging Alcikendi MEJIA MEJIA ("MEJIA"), a/k/a Edwin Rafael Gandia Cabrera, a/k/a "Alsiquendi," a/k/a "Edwin" with three counts of distribution and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, among other things.  This affidavit is intended to show that there is probable cause to believe that MEJIA committed the charged offenses and does not set forth all of my knowledge about this matter.

6.      All times set forth herein are approximate.

## PROBABLE CAUSE

### Overview and Background

7. On March 8, 2024, March 12, 2024, and March 22, 2024, a DEA Confidential Source (the "CS"),[1] acting at the direction of the DEA negotiated three controlled purchases of suspected fentanyl and cocaine, from MEJIA. An undercover officer (the "UC") acted as a courier for two of those transactions. As outlined in more detail below, on March 8, 2024, the UC acquired about 1,500 pills of suspected fentanyl, on March 12, 2024, the UC acquired about 1,000 pills of suspected fentanyl, and on March 22, 2024, law enforcement seized: 1) about 30,000 pills of suspected fentanyl; and 2) two kilograms of suspected cocaine that MEJIA delivered to the CS. Each of these controlled purchases were audio and video recorded.

8. On or about February 2024, law enforcement learned about a man known as "Edwin" and later determined by law enforcement to be MEJIA, who had kilogram quantities of narcotics available in Boston and used phone number XXX-XXX-XXXX (the "7123 phone").

9. At the direction of the DEA, the CS called the 7123 phone. In conversations that occurred on February 26 and 27 of 2024, MEJIA agreed to provide a sample of fentanyl powder and "M30" fentanyl pills on February 28, 2024.

10. On February 28, 2024, the UC drove an undercover vehicle ("UCV") to the agreed-upon meet location, which was 757 Gallivan Boulevard, Boston, Massachusetts. Surveillance units observed a black Chevy Cruze bearing Massachusetts registration number

---

[1] The CS is providing information to the DEA for financial consideration. This CS has provided information in numerous federal investigations since the early 2000s and will be compensated for his work on this investigation. These investigations have led to many significant seizures of narcotics, narcotics proceeds, and firearms, as wells as many successful prosecutions and convictions for violation of federal drug laws. I believe the information provided by the CS is reliable. I am aware that the CS was arrested for possession with intent to distribute cocaine more than twenty years ago. I am unaware of any other criminal charges for this CS.

5FJC58 (the "Cruze") enter the parking lot of the agreed-upon meet location and park near the UCV. Law enforcement databases showed the Cruze was registered to Edwin Gandia Cabrera, date of birth xx-xx-1997, at 5 Intervale St., Apt. 102, Dorchester, Massachusetts 02121.

11. Surveillance units observed MEJIA exit the driver's door of the Cruze and enter the front passenger door of the UC vehicle.

12. While inside the UCV vehicle, MEJIA handed a small foil wrapped package to the UC. MEJIA then exited the vehicle and got back into the Cruze. The package contained plastic wrapped light colored powder and small blue pills wrapped in clear plastic, which were both seized as evidence.

13. On March 12 and 15, 2024, the DEA Northeast Regional Laboratory analysis confirmed the presence of fentanyl in the powder and the pills from that package.

## Controlled Buys

**On March 8, 2024, the UC purchased about 1,500 pills of suspected fentanyl from MEJIA.**

14. On March 8, 2024, the UC conducted an undercover buy of approximately 1,500 "M30" fentanyl pills from MEJIA.

15. In recorded calls between the CS and MEJIA that occurred during the week of March 3, 2024, MEJIA agreed to sell 1,500 pills for $2 a pill and that the sale would occur at 727 Morrissey Boulevard in Dorchester, Massachusetts.

16. Before the controlled purchase, law enforcement observed MEJIA driving the same vehicle (the Cruze) that he drove to the drug transaction on February 28, 2024. MEJIA drove the Cruze to the buy location.

17. Surveillance saw MEJIA exit the Cruze and enter the UCV carrying a cardboard box. While inside the UCV, MEJIA handed the box to the UC.

18. The UC observed a clear plastic bag containing blue colored pills inside the box and handed MEJIA $3,000 in official authorized funds ("OAF") for the pills.

19. MEJIA took the OAF, exited the UCV, entered the Cruze and left the area.

20. The pills were seized as evidence and sent to DEA's Northeast Laboratory for further testing.

21. Based on my training and experience and knowledge of this case, I believe the pills likely contained fentanyl.

**On March 12, 2024, the UC purchased about 1,000 pills of suspected fentanyl from MEJIA.**

22. On March 12, 2024, the UC conducted a controlled purchase of approximately 1,000 "M30" fentanyl pills from MEJIA.

23. On March 12, 2024, MEJIA agreed to sell 1,000 pills to the CS through a courier (the UC) and that the sale would occur at 45 Morrissey Boulevard in Boston, Massachusetts.

24. Law enforcement again observed MEJIA driving the Cruze to the meet location, where the UC was waiting in a UCV.

25. Surveillance units observed MEJIA exit the Cruze and enter the UCV carrying a bag. Inside the UCV, MEJIA placed the bag on the floor of the UCV and then handed to the UC.

26. The UC observed that the bag contained clear plastic containing blue colored pills inside the bag and handed MEJIA $2,000 in OAF for the pills. MEJIA took the OAF, exited the UCV, entered the Cruze, and left the area.

27. Law enforcement seized the pills as evidence and sent them to DEA's Northeast Laboratory for further testing. Based on my training and experience and knowledge of this case, I believe the pills likely contained fentanyl.

**On March 22, 2024, the DEA seized about 30,000 pills of suspected fentanyl and about two kilograms of suspected cocaine from MEJIA.**

28. On or about February of 2024, in recorded conversations, MEJIA informed the CS that he could sell multiple kilograms of controlled substances.

29. During the week of March 18, 2024, in recorded conversations, MEJIA advised the CS that he could sell 30,000 pills containing fentanyl, two kilograms of cocaine, and two kilograms of fentanyl.

30. Starting at 10:40 a.m. on March 22, 2024, during a series of recorded calls and WhatsApp messages, MEJIA stated to the CS that he had 30,000 pills and was trying to get the kilograms of cocaine and fentanyl. In one exchange, MEJIA sent a picture of a grey shopping bag containing the pills to the CS.

31. At a neutral location, law enforcement searched the CS for drugs, weapons, and excess money, with negative results.

32. Law enforcement drove the CS in a law enforcement vehicle, a maroon Nissan Altima (the "Altima"), and parked the Altima at 1620 Tremont Street, Boston, Massachusetts in a Stop & Shop parking lot. There was an audio/video recording device in the car, which law enforcement activated. Law enforcement exited the vehicle, while the CS remained in the vehicle, in the driver's seat.

33. In the early evening, the CS provided the address at which the transaction would occur—1620 Tremont Street, Boston, Massachusetts (the parking lot of a Shop & Stop grocery store)—to MEJIA.

34. Around the same time, surveillance observed MEJIA in Dorchester, with a bag, walking to a black and red scooter, getting on the scooter, and departing from that area.

35. Shortly after 6:40 p.m., surveillance observed MEJIA arrive at the meet location on the scooter, circle the parking lot multiple times, park the scooter in the area of the Altima, and walk from the scooter to the Altima.

36. At about 6:48 pm, surveillance observed MEJIA enter the Altima with a grey plastic shopping bag.

37. After some time, surveillance observed that MEJIA got out of the Altima, went back to his scooter, and returned to the Altima.

38. MEJIA remained in the maroon Altima for about twenty minutes before getting out, looking to the entrance of the parking lot, and motioning towards a gray colored Honda CRV (the "CRV"). The CRV parked next to the Altima, and MEJIA got into the rear passenger seat of the CRV. A short time later, MEJIA exited the CRV and got back into the Altima. Video shows that, when MEJIA got back into the Altima, he pulled at least one wrapped, marked brick from the inside of his hooded sweatshirt.

39. A few minutes later, the CS popped the trunk to the Altima, exited the Altima, and walked to the back of the Altima. Law enforcement approached the Altima and removed MEJIA from the front passenger seat.

40. On the floor of the front passenger seat, where MEJIA had been sitting, law enforcement found a grey plastic shopping bag that contained approximately 30,000 blue colored pills wrapped in plastic and two brick-shaped objects wrapped in plastic.

41. Based on my training and experience and the knowledge of this case, I believe the 30,000 pills contained fentanyl and the brick-shaped objects were two kilograms of narcotics that MEJIA agreed to sell.

24-mj-5116-JGD

42. Law enforcement seized the two bricks and pills, sealed them into an evidence bag, and secured them at Boston Police Headquarters, before transporting them to the DEA Boston Field Division for processing and safekeeping.

## Conclusion

43. Based on the information contained in this affidavit, there is probable cause to believe that, on March 8, 2024, March 12, 2024, and March 22, 2024, Alcikendi MEJIA MEJIA, a/k/a Edwin Rafael Gandia Cabrera, a/k/a "Alsiquendi," did distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1).

*Brandon Barber*
Brandon Barber
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me via telephone in accordance with Fed. R. Crim. P. 4.1 on this ___th day of March 2024 **Mar 23, 2024**

*Judith Gail Dein*
HONORABLE JUDITH GAIL DEIN
UNITED STATES MAGISTRATE JUDGE